**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DANIEL JONES,

Petitioner,

-v- 9:23-CV-415 (AJB/ML)

DANIELLE TOPE,

Respondent.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**ORDER ON REPORT & RECOMMENDATION**

On April 4, 2023, *pro se* petitioner Daniel Jones ("petitioner"), who is civilly confined in the custody of the New York State Office of Mental Health ("OMH") under Article 10 of the Mental Hygiene Law ("MHL"), filed this habeas corpus action pursuant to 28 U.S.C. § 2254. Dkt. No. 1. Along with his petition, petitioner moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

The matter was initially assigned to Senior U.S. District Judge Thomas J. McAvoy, who referred the matter to U.S. Magistrate Judge Miroslav Lovric. Thereafter, Judge Lovric granted petitioner's IFP Application, Dkt. No. 3, and ordered respondent to answer the petition and file the relevant state-court records, Dkt. No. 5. Respondent appeared through counsel, Dkt. No. 5, filed the state-court records, Dkt. Nos. 13, 25, and the parties briefed the habeas petition, Dkt. Nos. 14, 15, 24. The case has since been reassigned to this Court. Dkt. No. 27.

On August 10, 2026, Judge Lovric advised by Report & Recommendation ("R&R") that the petition be dismissed as moot and that no certificate of appealability be issued. Dkt. No. 32. As Judge Lovric explained, petitioner's habeas petition challenged a state-court OMH annual

review decision (rendered in 2020) that no longer formed the basis for petitioner's ongoing civil confinement, since in 2023 a state court had conducted a *de novo* review of petitioner's case and concluded that confinement under the MHL remained warranted. *Id*.

Petitioner has lodged objections. Dkt. No. 35. There, he contends that Judge Lovric misapplied certain Second Circuit precedent and that his petition is not moot because his claims are capable of repetition, yet have evaded review. *Id*. In opposition, respondent argues that Judge Lovric correctly applied the Second Circuit precedent in question and, as for petitioner's repetition argument, respondent contends that the claims arising from the 2020 state-court determination are unique to that hearing. Dkt. No. 40.

Upon *de novo* review, the R&R will be accepted in part and modified in part. *See* 28 U.S.C. § 636(b)(1)(C). As an initial matter, the Court agrees with Judge Lovric and respondent that this habeas corpus petition appears to be moot. Petitioner is a convicted child molester who served a twenty-year prison sentence for his crimes. *See People v. Jones*, 236 A.D.2d 846 (4th Dep't 1997).

Those state-court crimes qualified petitioner for screening under Article 10 of the MHL, which requires the OMH to screen all "detained sex offenders" who are nearing their anticipated release date to determine whether they require civil management. Based on that screening, the State sought to have petitioner involuntarily civilly confined pursuant to the MHL. After a due process hearing in state court, petitioner was ordered confined. *State v. Daniel J.*, 180 A.D.3d 1347 (4th Dep't 2020), *leave to appeal denied*, 35 N.Y.3d 908 (N.Y. 2020).

On September 13, 2021, petitioner sought federal habeas relief from this civil confinement order. *Jones v. Tope*, 9:21-CV-1007 (AMN/ML). U.S. District Judge Anne M. Nardacci denied relief and dismissed that petition on June 27, 2024. *Id*. at Dkt. No. 44. Thereafter, the U.S. Court of Appeals for the Second Circuit denied petitioner's motion for a certificate of appealability. *Id*.

at Dkt. No. 49. While that habeas petition was still pending before Judge Nardacci, petitioner went ahead and filed this petition on April 4, 2023.

Liberally construed, petitioner's second habeas petition might be challenging a different concrete and continuing injury.[1] To understand why, you have to look to additional provisions of Article 10 of the MHL. Where, as here, the State has "screened" a qualifying individual and successfully petitioned for his involuntary civil commitment, that person has the right to seek an "annual review" of their ongoing civil confinement. *See* MHL § 10.09. This annual review includes the right to a mental health evaluation and an evidentiary hearing to determine whether continued confinement remains warranted. *See id.*

Importantly, petitioner's habeas claims in this action are *not* about his original civil confinement order (which he challenged in his first habeas petition before Judge Nardacci), but to a subsequent 2020 annual-review order in which a state court concluded that he should *continue* to be civilly confined under Article 10 of the MHL. Courts are in agreement that the legality of ongoing civil confinement can be reviewed under 28 U.S.C. § 2254. *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 176 (2001).

But as respondent points out, petitioner is no longer civilly confined under the 2020 annual-review order, either. This is because in early 2021, petitioner invoked his right to pursue a subsequent annual-review petition seeking discharge from civil confinement pursuant to MHL § 10.09. There, he was appointed counsel and obtained expert reports on his psychiatric condition. Later,

[1] In the habeas context, a petition "does not necessarily become moot" when the order it challenges is no longer in effect. *See United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999). Instead, the habeas petitioner need only show that he continues to suffer "some concrete and continuing injury" or "collateral consequence" traceable to the challenged order. *Id.* The continuing injury must be "likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (cleaned up).

a state court held an evidentiary hearing, concluding in a written decision dated May 22, 2023, that petitioner is *currently* a dangerous sex offender requiring *continued* civil confinement.[2]

Notably, the MHL's annual-review process in Article 10 involves a *de novo* review of petitioner's civil confinement, *i.e.*, his current mental condition and dangerousness. This means that, as of today, petitioner's ongoing civil confinement is governed by the more recent annual-review determination (from May 22, 2023) rather than the 2020 determination that he has challenged in this habeas proceeding. Therefore, any infirmities with the 2020 annual-review process (such as those petitioner is challenging in this second habeas proceeding) cannot be meaningfully redressed by a favorable judicial decision in this case. Put differently, it is moot.

In reaching that conclusion, the Court agrees with Judge Lovric and respondent that the Second Circuit's decision in *Janakievski v. Exec. Dir., Rochester Pysch. Ctr.*, 955 F.3d 314 (2d Cir. 2020), is distinguishable. There, the habeas petitioner initially pleaded "not responsible by reason of mental disease or defect" to certain state-court crimes pursuant to New York Criminal Procedure Law § 330.20, which triggers a statutory process that can result in various forms of involuntary civil custody if the person is determined to be mentally ill or suffering from a dangerous mental disorder.

As relevant here, C.P.L. § 330.20 provides for periodic reviews of the individual's mental condition, which are used to determine which of three categories (or "tracks") the person belongs. *Janakievski*, 955 F.3d at 317. A "track one" individual has a dangerous mental disorder (and must be confined to a secure mental health facility). *Id.* A "track two" individual is mentally ill but not

---

[2] Petitioner has taken a direct appeal of this annual-review determination to the Appellate Division, where it remains pending. Thus, even if the Court were to permit petitioner an opportunity to amend his petition to include claims arising from this subsequent annual-review order, any amended claims would be subject to dismissal as unexhausted at this time. *See Janakievski v. Exec. Dir., Rochester Pysch. Ctr.*, 955 F.3d 314, 320 & n.3 (2d Cir. 2020) (permitting amendment on remand but acknowledging that amended claims might be foreclosed by procedural barriers).

dangerous (and must be confined to a non-secure mental health facility with an "order of conditions"). *Id.* A "track three" individual is neither mentally ill nor dangerous (and must be discharged unconditionally or released with an "order of conditions"). Importantly, though, an individual's "track" status is "permanent," and an individual subject to an "order of conditions" can be recommitted to involuntary custody at any time "based on a showing by a preponderance of the evidence that the defendant suffers from a dangerous mental disorder." *Id.* at 318.

In 2009, the petitioner in *Janakievski* underwent a § 330.20 examination, was found to suffer from a "dangerous mental disorder," was placed into "track one," and was confined to a secure mental health facility. 955 F.3d at 317. Thereafter, a state court issued a series of retention orders that continued the petitioner's involuntarily civil commitment along "track one," repeatedly finding that the petitioner continued to suffer from a dangerous mental illness. *Id.* Later, in August of 2012, the state court issued a retention order that concluded the petitioner "was no longer dangerous but remained mentally ill and in need of inpatient treatment." *Id.*

Although that last order expired in July of 2013, the petitioner remained confined in a non-secure mental health treatment facility. *Janakievski*, 955 F.3d at 317. In 2014, the petitioner filed a *pro se* § 2254 habeas petition that challenged the validity of the original 2009 state-court order that found that he suffered from a "dangerous mental disorder" and ordered him civilly committed under C.P.L. § 330.20, and the subsequent state-court orders that extended the duration of his involuntary civil confinement. *Id.* at 316.

But while this habeas petition was pending in federal court, the state court found that the petitioner's condition had improved and ordered him conditionally released from inpatient custody subject to an "order of conditions." *Janakievski*, 955 F.3d at 316. Although the petitioner remained subject to the possibility of recommitment under C.P.L. § 330.20, the trial court dismissed

the petition as moot, reasoning "that the limited-duration orders of confinement that the petition challenged had all expired and that [petitioner] had been released from inpatient custody." *Id.*

Thereafter, the Second Circuit granted the petitioner a certificate of appealability on the mootness question, *Janakievski*, 955 F.3d at 318, and vacated and remanded the trial court's dismissal of the habeas petition for further proceedings, *id.* at 319. In doing so, the panel concluded that even though the prior state-court orders that the petitioner had challenged were no longer in effect, the fact that the petitioner remained "vulnerable to recommitment" under C.P.L. § 330.20 constituted an actual injury that was traceable to the orders challenged by the habeas petition that was likely to be redressed by a favorable judicial decision. *Janakievski*, 955 F.3d at 320.

As the Second Circuit explained, "[a] decision by the habeas court to grant [the] petition and vacate the challenged orders would give [petitioner] the chance to be immediately rid of the burdens imposed by the order of conditions, rather than having to wait until its expiration." *Janakievski*, 955 F.3d at 320. The panel reasoned that the original 2009 commitment order found petitioner to be dangerously mentally ill and placed him in "track one," which meant that he would "eventually be subject to an order of conditions, and thus making him vulnerable for a minimum of three years to recommitment in a state psychiatric facility without the same protections that he would enjoy if he had previously been released from custody unconditionally." *Id.* at 322.

Applied to this case, Judge Lovric found *Janakievski* distinguishable because unlike C.P.L. § 330.20's three-track scheme that imposes a trailing set of restrictions, Article 10 of the MHL provides for a *de novo* annual-review process that assesses the individual's current mental condition and permits immediate discharge, either unconditionally or to supervision. MHL § 10.09(h). And because petitioner had apparently exercised his right to another *de novo* annual review while this habeas action was pending, any injury traceable to the 2020 annual review was moot.

This makes good sense. After all, if subsequent Article 10 annual-review determinations were *not* distinct injuries for purposes of habeas review, then it seems like this petition (recall that this is petitioner's *second* habeas petition arising from his involuntary civil confinement under Article 10 of the MHL) should have been consolidated with the habeas petition that was already pending before Judge Nardacci. If consolidation was not the answer, then perhaps this second habeas petition should have been barred by some aspect of AEDPA's "second or successive" gate-keeping rules. In habeas, you usually cannot eat your cake and have it, too.

Perhaps one approach to avoid mootness in this scenario would have been to seek a *de novo* annual review, receive a determination from a state court, exhaust your state-court remedies as to that determination, and then waive your right to subsequent annual reviews while you pursue federal habeas relief. But that puts the habeas petitioner on the horns of a dilemma—should he waive opportunities for release while his federal habeas petition grinds it way to a conclusion?

Worse still, that approach might not even work, since Article 10 of the MHL appears to *require* some kind of annual review, regardless of whether the individual signs a waiver or not. *See* MHL § 10.09(d). And if that's true, then maybe this habeas petition should *not* be mooted by the subsequent annual review after all, since finding mootness would effectively permit the re-spondent to evade federal habeas review of any particular annual-review determination. *But see Holmes v. State of N.Y.*, 125 A.D.3d 1306 (4th Dep't 2015) (rejecting mootness argument where "all future annual review proceedings" were stayed pending appeal).

Habeas rules are convoluted. So it is no surprise that petitioner, who is not represented by counsel, failed to navigate these waters perfectly. Indeed, the Second Circuit has cautioned that *pro se* habeas petitioners are at a distinct disadvantage, because they "ordinarily lack legal knowledge and resources." *Garcia v. Superintendent of Great Meadow Corr. Facility*, 841 F.3d

581, 583 (2d Cir. 2016). So the Court will put aside the tricky question of mootness and modify the R&R to the extent necessary to conduct a *de novo* review of the habeas petition on the merits.

The problem for petitioner is that his underlying claims arising from the 2020 annual review process are unexhausted, procedurally barred, and/or meritless. First, petitioner contends that he was deprived access to his treatment records. But as respondent points out, petitioner conceded in his appellate brief that he was given "full access" to his records, *Daniel J.*, 206 A.D.3d at 1562, and the record below confirms that petitioner had access to his records before the state-court hearing, Dkt. No. 14 at 30–32. So this claim is meritless.

Second, petitioner contends that he was deprived of a fair trial and due process because the State failed to prove, by clear and convincing evidence, that he currently suffered from a mental abnormality and was a dangerous sex offender requiring treatment. This claim is unexhausted. It is also meritless. The underlying record confirms that the evidence before the state court was legally sufficient, even under the more demanding standard that applies to criminal convictions set forth in *Jackson v. Virginia*, 443 U.S. 309 (1979). *See* Dkt. No. 14 at 33–39.

Third, petitioner contends that his *pro se* state-court motion was assigned to the wrong state-court judge. Aside from the fact that this claim is not of a federal constitutional dimension, *see Swarthout v. Cooke*, 562 U.S. 216, 219 (2011), the Court agrees with respondent that the state court's handling of petitioner's *pro se* state-court filing did not amount to federal constitutional error. Dkt. No. 14 at 40–45.

Fourth, petitioner contends that his attorney provided ineffective assistance of counsel at the annual review proceedings. This claim was not exhausted and is procedurally defaulted. *See* Dkt. No. 14 at 46–49. Even assuming otherwise, the record confirms that petitioner's ineffective-assistance claims are plainly meritless. *See id.* at 51–63. As respondent emphasizes and the record

reflects, petitioner's counsel "did his best with a very weak hand." *Id.* at 60. Accordingly, the petition must be denied and dismissed in all respects.

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 32) is ACCEPTED as modified;

2. The petition (Dkt. No. 1) is DENIED and DISMISSED; and

3. No Certificate of Appealability will be issued.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

**IT IS SO ORDERED.**

Dated: November 12, 2026
Utica, New York.

Anthony J. Brindisi
U.S. District Judge